IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:20-CR-103-TWT-LTW |
| BANGALLY TOURAY | : | |

### DEFENDANT TOURAY'S POST-HEARING BRIEF IN SUPPORT OF THE MOTION TO SUPPRESS BORDER SEARCH

The Defendant, Mr. Bangally Touray, hereby offers this post-hearing brief on the pending motion to suppress the border search. (Doc. 125). On May 12, 2019, Mr. Touray went to John F. Kennedy International Airport in New York City, New York. Mr. Touray was stopped and searched on the jetway boarding his international flight. His phone was seized and later searched without a warrant. The admissibility of evidence seized from Mr. Touray's phone rests on several questions: *(1) Whether extensive searches of Mr. Touray's cell phone incident to his seizure at the border—without a warrant or any individualized suspicion that the phone contained contraband—violated the Fourth Amendment, (2) Was this a border search when Mr. Touray was leaving the country, rather than entering, and (3) Whether Mr. Touray was subjected to an extended border search when the Government relocated the item to a secondary location not at the border.*

1

In the brief which follows, counsel will first describe the factual background of Mr. Touray's detention and search, and second, compare those facts to the legal standards and case law on these topics. In the end, this Court ought to conclude that Mr. Touray detention and search was illegal and violated Mr. Touray's 4th Amendment Rights, and that the motion to suppress be granted.

Statement of Facts

Defendant Bangally Touray has been charged in an indictment with conspiracy to launder money in support of drug trafficking (Doc. 38). The government alleges that between September 2, 2017, and February 11, 2020, TOURAY and his co-defendants conspired to launder money in the Northern District of Georgia and elsewhere in the United States. On May 12, 2019, TOURAY went to John F. Kennedy International Airport in New York City, New York. TOURAY was scheduled to depart from New York City (NYC) to Brussels, Belgium, and then from Brussels to Banjul, Gambia. Homeland Security Investigations (HSI) Special Agent Daniel SYMONDS and officers with the U.S. Customs and Border Protection (CBP) seized Mr. Touray as he attempted to board the flight departing from NYC to Belgium. During the seizure, officers discovered envelope with $13,000.00. The $13,000.00 was returned to Mr. Touray. Officers confiscated Mr. Touray's Samsung Galaxy S6 cell phone, however, the passcode to unlock the cell phone did not work.

Subsequently, on May 16, 2019, Special Agent DEVANE successfully disabled the phone's locking mechanism by using the Cellebrite software. Agent Devane then conducted a manual search of the phone. DEVANE did not have a search warrant authorizing the search of Mr. Touray's cell phone. During the search of the phone, Agent Devane located a text message to a contact named "Ja3."[1] The message contained a photograph of a DHS chain of custody receipt (No. 6792687). This receipt reflected the seizure of $66,000.00 from Mr. Touray on March 26, 2019. The Government now offers this evidence collected from this search and seizure of Mr. Touray's cell phone in support of their case against him.

## Standing

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Barber*, 777 F.3d 1303 (11th Cir., 2015), *citing Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998)."

Mr. Touray has a personal expectation of privacy because he is the person seized and searched, and the Samsung Galaxy S6 cell phone belongs to him. Mr. Touray's expectation of privacy in his person and cell phone is reasonable and is

---

[1] SA Devane believes "Ja3" is a co-conspirator of TOURAY.

one that society recognizes as reasonable as laid out in the *Riley* case. A person's cell phone contains "the privacies of life," and that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. *Riley v. California*, 134 S.Ct. 2473, 189 L.Ed.2d 430, 82 USLW 4558 (2014). TOURAY has standing under the Fourth Amendment to challenge the search of his person and cell phone.

Argument & Citation of Authority

I. THE WARRANTLESS FORENSIC SEARCH AND SEIZURE OF MR. TOURAY'S PHONE

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *U.S. v. Goddard*, 312 F.3d 1360 (11th Cir., 2002), *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Supreme Court sets forth a two-part standard for when a Fourth Amendment search has occurred: (1) the individual has "manifested a subjective expectation of privacy" in the thing

4

searched; and (2) "society is willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).

"Since the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to…prevent the *introduction of contraband into this country* [emphasis added]." *United States v. Montoya De Hernandez*, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), *See United States v. Ramsey*, 431 U.S. 606, 616-617, 97 S.Ct. 1972, 1978-1979, 52 L.Ed.2d 617 (1977). "This Court has long recognized Congress' power to police *entrants* [emphasis added] at the border." *United States v. Montoya De Hernandez*, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), *See Boyd v. United States*, 116 U.S. 616, 623, 6 S.Ct. 524, 528, 29 L.Ed. 746 (1886).

"[A] warrant is generally required before such a search [of a cell phone], even when a cell phone is seized incident to arrest." *Riley v. California*, 134 S.Ct. 2473, 189 L.Ed.2d 430, 82 USLW 4558 (2014). "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Riley v. California*, 134 S.Ct. 2473, 189 L.Ed.2d 430, 82 USLW 4558 (2014).

Currently, the Ninth Circuit and Fourth Circuit Court of Appeals holds that a forensic search of a digital device, such as a laptop or cell phone, requires

reasonable suspicion. "Notwithstanding a traveler's diminished expectation of privacy at the border, the search is still measured against the Fourth Amendment's reasonableness requirement, which considers the nature and scope of the search. Significantly, the Supreme Court has recognized that the "dignity and privacy interests of the person being searched" at the border will on occasion demand "some level of suspicion in the case of highly intrusive searches of the person."" *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013), *citing Flores–Montano*, 541 U.S. at 152, 124 S.Ct. 1582. "Given the 'unparalleled breadth of private information' that such a search could reveal, we held that 'a forensic search of a digital phone must be treated as a nonroutine border search, requiring some form of individualized suspicion' even if not a warrant." *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019), *citing Kolsuz* , 890 F.3d at 145–46. "[O]ur decision in *Kolsuz* teaches that the Government may not 'invoke[ ] the border exception on behalf of its generalized interest in law enforcement and combatting crime.'" *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019), *Kolsuz*, 890 F.3d at 143."

"The nature of the contents of electronic devices differs from that of luggage as well. Laptop computers, iPads and the like are simultaneously offices and personal diaries. They contain the most intimate details of our lives: financial records, confidential business documents, medical records, and private emails.

This type of material implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their "papers."'" U.S. Const. amend. IV., *Cotterman* at 964. "[T]he uniquely sensitive nature of data on electronic devices carries with it a significant expectation of privacy and thus renders an exhaustive exploratory search more intrusive than with other forms of property." *Id* at 966. "[The reasonable suspicion standard's] application to the forensic examination here will not impede law enforcement's ability to monitor and secure our borders or to conduct appropriate searches of electronic devices." *Id. at 966.* "[T]he forensic examination of Cotterman's computer required a showing of reasonable suspicion, a modest requirement in light of the Fourth Amendment." *Id*. at 968.

This proposition was upheld in *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019) (en banc) (No. 20-1043, petition for cert. pending). In *Cano*, Appellant Cano was arrested for carrying cocaine as he attempted to cross into the United States from Mexico at the San Ysidro Port of Entry. Following his arrest, a Customs and Border Protection official seized Cano's cell phone and searched it, first manually and then using software that accesses all text messages, contacts, call logs, media, and application data. "Applying *United States v. Cotterman* , 709 F.3d 952 (9th Cir. 2013) (en banc), we conclude that manual cell phone searches may be conducted by border officials without reasonable suspicion but that forensic cell phone searches require reasonable suspicion. We clarify *Cotterman* by

7

holding that "reasonable suspicion" in this context means that officials must reasonably suspect that the cell phone contains digital contraband." *Cano* at 1007.

The agents in Mr. Touray's case did not have reasonable suspicion to seize and forensically search Mr. Touray's phone. Mr. Touray had, two months earlier, been in possession of $66,000 on a domestic flight. The $66,000 was seized. Mr. Touray was stopped in this case to determine whether he was impermissibly carrying a large quantity of US Currency. Agents discovered $13,000 in an envelope on Mr. Touray's person. This money was returned, however, his cell phone was seized and later forensically searched. The agents here exploited the border search exception to the Fourth Amendment to go on a fishing expedition through Mr. Touray's phone. The nature of the stop was to determine whether Mr. Touray had an impermissible amount of US Currency, not whether he had evidence of criminal activity on his cell phone. The government provided no testimony that agents reasonably suspected the cell phone he was carrying would have contraband or evidence on it. They merely seized it just because they wanted to snoop around. If the government had any level of suspicion that contraband was located on Mr. Touray's phone after the $66,000 seizure, they would have been able to secure a search warrant to seize and search Mr. Touray's phone. Instead, the government found out Mr. Touray was traveling internationally and grabbed his phone as he was on the jetway.

The government wants this court to continue to allow them unfettered access to all international traveler's digital data without cause, merely because a person is inside an international terminal. If this application of the border exception continues, the government could seize and forensically search, for example, the CEO of Amazon's phone while he is en route from New York City to London for a routine business meeting, all without cause just to go fishing. *See United States v. Jones*, ––– U.S. –––, 132 S.Ct. 945, 957, 181 L.Ed.2d 911 (2012) (Sotomayor, J., concurring) (expressing "doubt that people would accept without complaint the warrantless disclosure to the Government of a list of every Web site they had visited in the last week, or month, or year"). "The Court's view of cell phones in *Riley* so closely resembles our own analysis of laptop computers in *Cotterman* that we find no basis to distinguish a forensic cell phone search from a forensic laptop search." *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019).

The government is essentially asking for two things from the Court: (1) to affirm that they have the authority to forensically search the phones, without cause, of anyone passing through the international airports, and (2) to trust them that they will apply this exception to the Fourth Amendment in good faith. The Court should apply the Ninth Circuit reasonable suspicion standard when forensically search a cell phone at the border, find that the government did not have reasonable suspicion, and grant Mr. Touray's motion to suppress.

## II. THIS WAS NOT A BORDER SEARCH AS MR. TOURAY WAS LEAVING THE UNITED STATES RATHER THAN ENTERING

Mr. Touray had an itinerary of New York City, NY to Brussels, Belgium, and then from Brussels to Gambia. The government stopped Mr. Touray on the jetway boarding his New York to Belgium flight.

"Time and again, we have stated that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Flores-Montano*, 541 U.S. 149 (2004), *citing United States v. Ramsey*, 431 U. S. 606, 616 (1977). "Congress… "has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant…to prevent the introduction of contraband into this country." *Flores-Montano* at 153, *Montoya de Hernandez*, supra, at 537 (citing *Ramsey*, supra, at 616-617 (citing Act of July 31, 1789, ch. 5, 1 Stat. 29)).

The key language here is 'crossing into this country.' At no time was Mr. Touray 'crossing into the country.' The government has a longstanding interest in preventing contraband from entering, not leaving. The government has no authority to forensically search a phone that is leaving the country.

III. **THE GOVERNMENT IMPROPERLY RELOCATED MR. TOURAY'S PHONE TO A SECONDARY LOCATION A SIGNIFICANT DISTANCE AWAY FROM THE BORDER**

Agent Symonds sent Mr. Touray's phone to Special Agent Devane via Federal Express from New York City to SA Devane's office in Atlanta, approximately 760 miles away. The courts have long held that an airport is considered the "functional equivalent of the border," but in no circumstance should it be considered a border search when the government seizes property and sends it 760 miles away for the actual search. This is an extremely intrusive and unreasonable seizure without particularized suspicion.

## Conclusion

What is abundantly clear is that the government had no particularized suspicion to seize and forensically search Mr. Touray's cell phone at the border. For all these reasons, Mr. Touray respectfully requests that this Court grant the motion to suppress search and seizure.

Dated: This the 27th day of June, 2021.

                                        Respectfully submitted,

                                        */s/ Michael Saul*
                                        **Michael H. Saul**
                                        Office of Michael H. Saul
                                        Attorney for Bangally Touray
                                        P.O. Box 4504
                                        301 Washington Avenue
                                        Marietta, GA 30061
                                        770-429-8787
                                        770-425-0903 (fax)
                                        saulattorney@gmail.com

                                        */s/Michael Ross*
                                        **Michael Ross**
                                        The Law Office of Michael Ross, LLC
                                        Georgia Bar No. 763334
                                        301 Washington Ave
                                        Marietta, GA 30060

CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1C, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to Nicholas Joy, Assistant United States Attorney, 600 Richard B. Russell Building, 75 Spring Street, S.W., Atlanta, Georgia, 30303.

Dated: This the 27th day of June, 2021.

>*/s/ Michael Saul*
>**Michael Saul**
>
>**/s/Michael Ross**
>**Michael Ross**